IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TALMADGE SCOBEY, *
*
Plaintiff, *
vs. * No. 3:06cv0078 SWW
*
*
NUCOR STEEL-ARKANSAS *
*
Defendant. *

MEMORANDUM AND ORDER

Plaintiff Talmadge Scobey brings this action against his former employer, defendant Nucor Steel-Arkansas ("Nucor"), for alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Plaintiff alleges interference with his substantive entitlement to FMLA leave and job restoration and retaliation because he exercised his right to FMLA leave. The following motions are before the Court: (1) motion of Nucor for summary judgment [doc.#25]; and (2) motion of plaintiff for partial summary judgment on the issue of liability [doc.#27]. Responses and replies to these motions have been filed and the matter is ready for decision. For the reasons that follow, the Court grants Nucor's motion for summary judgment and denies plaintiff's motion for partial summary judgment on the issue of liability.[1]

I.

Plaintiff began his employment with Nucor in July 1998.[2] From 1999 to 2005, plaintiff worked as a Ladle Man at Nucor's facility in Hickman, Arkansas. The Ladle Man position is

---

[1] This Court initially granted Nucor's motion for oral argument on its motion for summary judgment [doc.#42], but the Court has since determined that the parties' motions may be resolved on the record as it now stands.

[2] Unless otherwise indicated, the facts as herein set forth are undisputed for purposes of today's decision.

very labor and safety intensive, involving the handling of some 160 tons of molten steel, and requires substantial attention to detail. Failure to perform the Ladle Man job functions correctly and safely could result in serious injury or death to the operator and other employees.

In late 2002, plaintiff became by his own admission a "full blown alcoholic." Nevertheless, from that time until mid-April 2005, plaintiff was able to and did continue to perform his job as a Ladle Man.

In mid-April 2005, plaintiff missed four consecutive days of work while he was admittedly intoxicated. Pursuant to Nucor policy, upon the fourth unplanned absence, *i.e.*, any absence not planned and scheduled with the supervisor in advance, discharge will result. At the time of his absences, plaintiff knew and understood Nucor's policy regarding attendance.

Following are the circumstances surrounding plaintiff's four absences:

- April 9, 2005 – Plaintiff called Kirby Teeter, his direct supervisor, and asked that Teeter call him back.

- April 9, 2005 – Plaintiff called Randy Blakemore, a supervisor and friend, and disclosed that his ex-wife's father had passed away and sought guidance in how to arrange time off from work in order to attend the funeral. Blakemore told plaintiff to call in and arrange a swap or a vacation day as soon as possible.

- April 9, 2005 – Plaintiff spoke with Paul Serratt, a lead man, and wanted to know if he could get Wednesday the 13th covered for him because his ex-wife's father had died and he felt that he needed to go to the funeral. Plaintiff essentially was told that it would be okay and to work it out the next day with a co-worker.

- April 10, 2005 – Plaintiff called Seratt and was intoxicated. Seratt states plaintiff "said he was through and done with us, he was very emotional and I was very concerned over his mental state at the time. I asked him not to do anything stupid, call in for Monday and come and talk to Kirby, Bob or myself over what he wanted to do or what his options were. After my conversation with him I called Randy Blakemore (due to their relationship in the past) and advised him of the situation."

- April 10, 2005 – Blakemore received a call from Seratt who was concerned for

plaintiff's general welfare. That same night, plaintiff called Blakemore and stated that he was "done, through," and hung up the phone. Concerned that plaintiff had a deeper meaning to his statement, Blakemore made contact with plaintiff, first by phone, and then in person, and was informed by plaintiff that he was done working for Nucor and that "we (management) put a lot of pressure on the hourly employees and that he was sick of the stress that this pressure caused." Plaintiff stated he wanted to know when to talk to Nucor General Manager Sam Commella, but Blakemore recommended that he give it a few days to let his emotions stabilize until he attempted to speak with Commella.

- April 11, 2005 – Teeter finally got in touch with plaintiff following plaintiff's April 9th call and plaintiff told him he had suffered a nervous breakdown and then hung up on him without any further explanation.

- April 11, 2005 – Plaintiff called Steve Segars, a shift supervisor, and related "that his ex-wife's father had died and that he was fucked up (meaning himself), he also said that he had some issues and wouldn't be back for awhile. I ask if he had spoken to Kirby and he replied that he had. His speech was slurred as if he were under the influence of alcohol."

- April 11, 2005 – Plaintiff pulled up in Seratt's driveway, and Seratt went out onto the porch and attempted to talk to him. Plaintiff went to the back of his truck and took out a ladder that he had borrowed and threw it in the yard. Seratt again called out to plaintiff, but plaintiff got back in the truck, waved at Seratt, and drove off.

- April 12, 2005 – Plaintiff misses work and does not call anyone at Nucor.

- April 13, 2005 – Plaintiff misses work and does not speak directly with anyone at Nucor. Rather, plaintiff calls Kellie Crain, Nucor's Human Resources Manager and the person responsible for designating FMLA leave, and leaves her a message saying he would call her the next day.

- April 14, 2005 – After four consecutive absences – the period of which plaintiff states was a "complete blur" and of which he had no recollection as he had "blacked out" –, plaintiff calls Blakemore's cell phone and stated that he did not know what happened and that he believed that he had some type of nervous breakdown and wanted to get some help. Plaintiff stated he had talked to Segars the other night and that he also had tried to contact Crain. Blakemore states he told plaintiff to talk to Crain today and leave her a message and that plaintiff asked if Crain could make him an appointment. Blakemore said he wasn't sure of the process, but that Crain could help him out.

- April 15, 2005 – Plaintiff saw his doctor complaining of high blood pressure.

Plaintiff stated his ex-wife's father died, and that he's had a stressful week. Plaintiff was diagnosed with "Hypertension out-of-control with multiple exacerbating factors including noncompliance with his medications."

- April 15 – 19, 2005 – Plaintiff and Crain exchange phone messages for each other. Plaintiff makes no mention of depression. In an April 19th message, plaintiff leaves the following message for Crain: "Kellie, this is Talmadge calling you back. Tag, you're it. I'll holler at you later."

- April 19, 2005 – After numerous unsuccessful efforts, Crain finally reaches plaintiff and was able to speak with him. Plaintiff told Crain that he had an alcohol problem and was depressed. Crain explained to plaintiff that he needed to decide if he wanted to keep working for Nucor. Plaintiff stated he had been drinking that day, and Crain said she would set up an appointment with the Employee Assistance Program (EAP) for the next day. Crain told plaintiff not to drink anymore and plaintiff stated that he had "personal problems" along with his alcohol problem.

- April 19, 2005 – That evening, plaintiff called Crain on her cell phone and stated that he wanted to get help. Plaintiff said he was willing to start all over and be a good Nucor employee.

As indicated above, following plaintiff's and Crain's April 19th conversations, Crain set up an appointment for plaintiff at an inpatient alcohol treatment facility pursuant to Nucor's EAP. Prior to this time, plaintiff had never requested or taken leave for depression and had never told anyone at Nucor that he suffered from depression.

Plaintiff was assessed at CONCERN EAP on April 20, 2005, for problems with alcohol and depression, and was referred to Lakeside Hospital for an assessment and treatment. He was admitted at Lakeside on April 21, 2005, and discharged on April 26, 2005, following five days of inpatient care. Plaintiff's admitting and discharge diagnoses were alcohol dependence, alcohol withdrawal, depression not otherwise specified, posttraumatic stress disorder ("PTSD") "issues," hypertension, and job/family impairment.

After his five days of inpatient care, plaintiff was transferred to outpatient care and saw a

counselor for depression. Plaintiff completed three sessions of outpatient care. Plaintiff's prognosis on his May 5, 2005 discharge summary was "guarded, due to deciding to leave treatment early." Nucor states plaintiff left early because he balked at having to pay a $39 co-pay. Plaintiff, however, states he didn't leave treatment early but that they just let him go and basically kicked him out of outpatient care. In any case, plaintiff apparently was told to return to CONCERN. Following plaintiff's "rehab" treatments, CONCERN, on May 10, 2005, notified Crain that plaintiff "has demonstrated successful compliance with his initial recommendations" and that Nucor "may determine to return this employee to work at this time."

On May 20, 2005, plaintiff returned to Nucor and he and Commella met to determine appropriate discipline. During the meeting, Commella reminded plaintiff that he could be terminated for his unexcused absences, and plaintiff asked for a second chance. Plaintiff acknowledged he had a "taste" of a beer a few days before the meeting "to see what a beer tasted like" – not agreeing that "twelve a day for six months gave [him] a good opportunity to see what beer tasted like" – and stated that he would not understand why Commella would have concerns "when [Commella] out drank me." In any case, plaintiff was told he would be suspended for three days and that he would have a job but that it wouldn't be on the Ladle Wall. Commella told plaintiff he wasn't going to put him on Ladle Wall handling 160 tons of molten steel because too many lives were at stake, but that plaintiff would be given a second chance in an entry level job. Plaintiff replied, "Okay, as long as I'm part of Nucor." Thereafter, a disciplinary notification was issued to plaintiff stating that "[s]ince [plaintiff] has recognized and sought professional help for his personal problems, has vowed to change, and asked for a second chance he will not be terminated at this time ... As a result of the above [plaintiff's four

unplanned and unexcused absences on April 10-13]" plaintiff "will not keep his job at the Ladle Wall but will be transferred to an entry level job." Accordingly, plaintiff was demoted from his Ladle Wall position and its rotating shift to the position of Shipping Bay Floater (also called Shipping Bay Utility) with a straight night shift. This demotion, which was based on plaintiff's four absences on April 10-13, resulted in a substantial reduction in pay, some 40% to 50% of his pre-demotion pay.

Plaintiff began his new position on June 1, 2005. Plaintiff states he thought that when Nucor put him on straight nights, they were trying to make him quit (although he states that when Nucor put other individuals on straight nights, they were not trying to make them quit). In any case, during the two weeks he was in his new position, plaintiff did not complain to any supervisor or manager about his job and he received a raise. Nevertheless, plaintiff quit his new entry level position at Nucor by simply not showing up any further and without notifying anyone at Nucor of his intentions. This action followed.

II.

Nucor moves for summary judgment on grounds, among other things, that plaintiff cannot establish he suffered from a FMLA-protected serious health condition during his four absences on April 10-13 and cannot establish that he provided timely and adequate notice of a serious health condition during his four-day absence. Plaintiff, in turn, moves for partial summary judgment on the issue of liability on grounds that his four absences on April 10-13 qualify as a FMLA-protected serious health condition as a matter of law and that he gave Nucor adequate notice of his need for FMLA leave. Both parties argue there are no genuine issues of

material fact with respect to these issues and that they are entitled to summary judgment as a matter of law.

A.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id*. at 587 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

Under the FMLA, an eligible employee is entitled to up to twelve weeks of unpaid leave during a twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Thus, the employee must establish (1) that he suffers from a serious health condition and (2) that such condition makes the employee unable to perform the functions of his job. The term "serious health condition" under the FMLA means an illness, injury, impairment, or physical or mental condition that involves (a) inpatient care in a hospital, hospice, or residential medical care facility or (b) continuing treatment by a health care provider. 29 U.S.C. § 2611(11).[3]

Plaintiff premises his FMLA claim on both inpatient care and continuing treatment. The continuing treatment test for a serious health condition is met if an employee is incapacitated by "an illness, injury, impairment, or physical or mental condition" for more than three consecutive days and for which he is treated by a health care provider on two or more occasions. *Woods*, 409 F.3d at 990 (citing 29 C.F.R. § 825.114(a)(2)(i)). The relevant regulations list several categories of serious heath conditions involving continuing treatment, but plaintiff states he is relying on the categories of "[a] period of incapacity ... of more than three consecutive calendar days ..." and "[a]ny period of incapacity or treatment for such incapacity due to a chronic health condition." 29 C.F.R. § 825.114(a)(2)(i) and (iii). "Incapacity" means an "inability to work, attend school or perform other regular daily activities due to the serious health condition,

[3] Whether an employee has a serious health condition within the meaning of the FMLA is a mixed question of fact and law. *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000). It is for the fact finder to look at the record and decide if the evidence supports the elements of the objective test for a serious health condition under the regulations implementing the FMLA, and, once the fact finder has affirmatively found the necessary facts, the conclusion that an employee has a serious health condition is inescapable as a matter of law. *Id.* Therefore, if there are no genuine issues raised as to those facts, which are all material, then summary judgment on the question of serious health condition will likely be appropriate (at least if determining whether the plaintiff had a serious health condition will conclusively determine liability). *Id.*

treatment therefore, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i). A "chronic health condition" is one that requires periodic visits to a health care provider, continues over an extended period of time, and may cause "episodic rather than a continuing period of incapacity." 29 C.F.R. § 825.114(a)(2)(iii).

In order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he may need FMLA leave. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citations omitted). Although the employee need not name the statute, he must provide information to suggest that his health condition could be serious. *Id.* Employees thus have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position. *Id.* (internal quotation marks and citation omitted).

1.

The Court has carefully considered the matter and finds that plaintiff has not created a genuine issue of material fact that his four absences on April 10-13 were attributable to a serious health condition under the FMLA. Certainly, substance abuse, including alcoholism, can constitute a serious health condition under the FMLA. *See, e.g., Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 488 (6th Cir. 2005). FMLA leave for such a serious health condition, however, "may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider." 29 C.F.R. § 825.114(d). "[A]bsence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave." *Id.* Thus, plaintiff was entitled to leave for

treatment of alcoholism, but not for periods of absence resulting from the use of alcohol. *Jeremy v. Northwest Ohio Development Center*, 33 F.Supp.2d 635, 638 (N.D.Ohio 1999). *See also* *Domnick v. Ver Halen, Inc.*, 2003 WL 23095738 (W.D.Wisc. 2003) (FMLA covers absence necessitated by treatment for acute physical symptoms resulting from earlier alcohol abuse, but does not cover absence where the employee is "simply 'too intoxicated to come to work,' which is the situation that 29 C.F.R. § 825.114(d) clearly meant to exclude from FMLA protection").[4]

Plaintiff, however, argues that it was his "mental condition" that rendered him unable to perform the functions of his job on April 10-13 and that "[d]runkeness ... is a only a symptom of the underlying problems." He states the toll on his mental health from the stress of his job has been enormous and that he was a "psychological mess" as his diagnosis from Lakeside Hospital attests but hardly the simple drunk Nucor implies.

While plaintiff undoubtedly was having difficulties during the period of his four absences on April 10-13, there is no real dispute that plaintiff's four absences were a result of his use of alcohol and that it was for that reason that Crain set up an appointment for plaintiff at an inpatient alcohol treatment facility following which plaintiff went into "rehab." Plaintiff may have been depressed during his four absences, but alcohol acts as a depressant of the central nervous system, *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 516 (8th Cir. 1987), and plaintiff

[4] Although Nucor did not designate plaintiff's subsequent leave for treatment as FMLA leave, it is undisputed that Nucor provided plaintiff with leave to get treatment for his alcohol abuse and paid for plaintiff's inpatient and outpatient treatment in its entirety and also paid plaintiff sick pay during his leave. Plaintiff had no out-of-pocket expense associated with his treatment or leave, he was not disciplined for his leave for treatment following his four absences on April 10-13, and he was allowed to save his FMLA leave for a subsequent qualifying leave. Nucor thus states that plaintiff suffered no harm by its not designating plaintiff's leave for treatment as FMLA leave and further states that it has learned from experience that forcing employees to use FMLA leave during rehabilitation discourages them from seeking or completing the treatment they need. Plaintiff claims this was a violation of the FMLA and seeks injunctive relief, but the FMLA "'provides no relief unless the employee has been prejudiced by the violation,'" *Rodgers v. City of Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)), and this Court determines that plaintiff was not prejudiced by Nucor's not designating his leave for treatment as FMLA leave.

makes no showing that it was some other form of depression (or other mental condition) and not his use of alcohol that rendered him unable to perform the functions of his job on April 10-13. Indeed, plaintiff had no recollection of the period, having "blacked out."[5]

Moreover, "[d]epression, like many mental illnesses, is a condition with many variations, and in common parlance the word is used to describe a wide variety of symptoms, including simply 'a state of feeling sad.'" *Rask v. Fresenius Medical Care North America*, — F.3d —, 2007 WL 4258620, at *4 (8th Cir. 2007) (internal quotation marks and citations omitted). In *Rask*, the Eighth Circuit determined that because there was no medical evidence in the record indicating that all forms of diagnosed depression, even if left untreated, would result in incapacity, plaintiff therefore needed to apprise her employer of more than the mere fact that she had been diagnosed with something called "depression" to put them on notice that she had a serious health condition. *Id.*

Here, as in *Rask*, there is no medical evidence in the record indicating that all forms of diagnosed depression, even if left untreated, would result in incapacity, and there is no evidence in the record that plaintiff at any point gave anyone at Nucor details about his depression (or for that matter, any PTSD "issues" or his self-diagnosed nervous breakdown), its severity, or any incapacity that it might give rise to, sufficient to indicate that it, as opposed to his use of alcohol, was serious. *Rask*, — F.3d —, 2007 WL 4258620, at *5. Plaintiff had never requested or taken

---

[5] Nucor argues that the question of whether plaintiff could perform the essential functions of his job during his four-day "blur" is immaterial; rather, the proper legal inquiry is whether plaintiff was able to perform the essential functions of the Ladle Man job during the entirety of his alcoholism, which plaintiff's admissions establish he could. In support of this proposition, Nucor cites two cases – *Felix v. Sun Microsystems, Inc.*, 2004 WL 911303, at *10 (D.Md. 2004), and *EEOC v. Sara Lee Corporation*, 237 F.3d 349, 352-53 (4th Cir. 2001) – that were decided in relevant part under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The Court notes, however, that "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately." 29 C.F.R. § 825.702(b). *See also Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002) ("The rights Congress created under the FMLA are fundamentally different than those granted under the ADA"). Nucor does not explain how the application of the ADA in *Felix* and *Sara Lee* would apply to this FMLA action and the Court finds those cases to be inapposite for the proposition stated.

leave for depression and had never told anyone at Nucor that he suffered from depression, and Nucor lacked any context to indicate that plaintiff's use of alcohol was not the cause of his four absences, and it lacked context to link those absences with a serious health condition. *See id.*[6]

It is true that certain of the individuals with whom plaintiff spoke during his four-day absence expressed concern over plaintiff's mental state and concern that plaintiff had a deeper meaning to his statement that he was "done, through" (although plaintiff apparently clarified this statement in response to a query by Blakemore by stating that he "was done working for Nucor").[7] Similarly, Crain testified that suicide is always a concern when somebody is having problems. But courts applying the FMLA require a showing of incapacity, *see Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 123 (8th Cir. 1997) (an individual must be incapacitated to have a serious health condition under the FMLA), and courts generally have ruled that employees' statements that they are incapacitated and unable to perform the functions of their jobs are insufficient to establish incapacity under the FMLA; rather, they must provide some evidence from a medical professional or health care provider that they are unable to work. *See, e.g., Husinga v. Federal-Mogul Ignition Co.*, — F.Supp.2d —, 2007 WL 3293265, at *27 (S.D.Iowa 2007) ("to satisfy the 'unable to perform the functions of the position of employee' provision of 29 U.S.C. § 2612(a)(1)(D), plaintiff must present some evidence that his '*health care provider*'

---

[6] Plaintiff certainly has not demonstrated that his depression constituted a chronic condition as there is no evidence in the record that plaintiff ever sought or received treatment for depression following his three sessions of outpatient care in May 2005. Plaintiff's depression simply was not a condition that required periodic visits for treatment by a health care provider and continued over an extended period of time.

[7] Plaintiff also referenced his being "fucked up" and that he "had some issues," but those terms are ambiguous and could as easily refer to his use of alcohol. *Cf. Aubuchon v. Knauf Fibergalss GmbH*, 359 F.3d 950, 952 (7th Cir. 2004) ("If you have brain cancer but just tell your employer that you have a headache, you have not given the notice that the Act requires"). Plaintiff additionally states he was grieving for the death of his ex-wife's father, but the FMLA does not provide bereavement relief. *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F.Supp. 1216, 1226 (S.D. Iowa 1997).

had found that he was unable to work or unable to perform an essential function of his position") (emphasis in original); *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997) (same). Here, plaintiff has not provided any testimony or affidavits from medical professionals or the healthcare providers that treated him stating that he was unable to perform the functions of his job because of depression (or any other mental condition) as opposed to his use of alcohol during the period of his four absences. The only testimony in the record suggesting such was from plaintiff himself, who, as previously noted, had no recollection of the period, having "blacked out." Plaintiff poses the rhetorical question, "Was plaintiff drinking because he was depressed, or was plaintiff depressed because he was drinking?," but this question only illustrates the necessity, at least in these circumstances, of evidence from a medical professional or healthcare provider that it was depression or some other mental condition and not his use of alcohol that rendered him unable to perform the functions of his job.[8] As it stands, plaintiff's testimony on this point, without more, simply is not enough. *Cf.* *Brannon v. Oshkosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1037 (M.D.Tenn. 1995) (employee's gastroenteritis and upper respiratory infection did not constitute "serious health condition" since, although employee stayed home from work for more than three days and saw physician who prescribed medication, there was no proof that employee was "incapacitated" for more than three calender days; physician never advised employee to remain off work, physician's speculation that it was reasonable for someone to miss three or four days with employee's type of illness was

---

[8] Plaintiff argues that if Nucor had questions about whether he had a serious medical condition under the FMLA it should have requested a medical certification. An employer, however, is required to request a medical certification or grant FMLA leave only when an employee provides proper notice that his absence may be FMLA-qualifying. *Hastings v. Carlson Marketing Group, Inc.*, 2005 WL 2837391, at * 5 (D.Minn. 2005) (citing *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999)). Plaintiff failed to provide such notice that his inability to work on April 10-13 was due to something other than his use of alcohol.

insufficient to prove absence was necessary, and employee's own testimony that she was "too sick to work" also was insufficient to prove that her absence was necessary). *See also Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1195 (8th Cir. 2000) (noting that plaintiff's medical records were completely devoid of any evidence that he was instructed by doctors that shoulder injury was of such severity as to make him unable to perform his job); *Stiefel v. Allied Domeco Spirits & Wine U.S.A., Inc.*, 184 F.Supp.2d 886, 891 (W.D.Ark. 2002) (noting that although plaintiff sincerely believed that absences were attributable to complications arising from miscarriage, the record contained no opinion from a health care provider to support this medical conclusion; plaintiff was not qualified to give medical opinion her physical condition was related to the miscarriage); *Joslin v. Rockwell Intern. Corp.*, 8 F.Supp.2d 1158, 1161 (N.D.Iowa 1998) (noting that the only testimony in the record suggesting that the plaintiff was unable to work was from the plaintiff herself and that "[s]uch testimony is not enough to prove incapacitation").[9] Accordingly, plaintiff has not created a genuine issue of material fact that his four absences on April 10-13 were attributable to a serious health condition under the FMLA and Nucor's demotion of plaintiff on the basis of those four absences therefore did not violate the FMLA. *See Rankin*, 246 F.3d at 1147 (where employee's absences are not attributable to a serious health condition, the FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences).[10]

---

[9] *But cf. Lubke v. City of Arlington*, 455 F.3d 489, 495-96 (5th Cir. 2006) (expert testimony was not necessary to demonstrate wife's incapacity for purposes of determining existence of serious health condition); *Rankin v. Seagate Technologies, Inc.*, 246 F.3d 1145, 1148-49 (8th Cir. 2001) (plaintiff's affidavit that she was too sick to work, her testimony of her conversations with nurses about her condition, and her medical records showing that she claimed to be suffering from certain symptoms for a week were sufficient to create a genuine issue of material fact regarding her incapacity).

[10] Having determined that plaintiff has not established his absences on April 10-13 were attributable to a serious health condition under the FMLA, there is no need to address plaintiff's remaining FMLA claims of job restoration and retaliation.

2.

To the extent plaintiff is asserting a claim of constructive discharge, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly; therefore, an employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged. *Baker v. John Morrell & Co.*, 382 F.3d 816, 829 (8th Cir. 2004).[11] Here, plaintiff simply walked off the job following his demotion after two weeks and never complained to any supervisor or manager about his job. Thus, plaintiff has not established a constructive discharge claim, even assuming he could demonstrate the other requirements of a constructive discharge claim (which he has not).

III.

For the foregoing reasons the Court grants Nucor's motion for summary judgment and denies plaintiff's motion for partial summary judgment on the issue of liability. Judgment will be entered accordingly.

IT IS SO ORDERED this 7th day of January 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

[11] *Baker* is a Title VII case, but claims of constructive discharge are generally analyzed in the same manner under the FMLA as well. *See* *Nelson v. Arkansas Pediatric Facility*, 1 Fed.Appx. 561 (8th Cir. 2001).